**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLAUDIA GRACIANO, Plaintiff, v. JO ANNE B. BARNHART, Commissioner of the Social Security Administration, Defendant. | NO. CV-05-04538 SS<br>**MEMORANDUM DECISION AND ORDER** |

Claudia Graciano ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits and Supplemental Security Income Benefits. Alternatively, she asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's Case Management Order, the parties filed a joint stipulation ("Jt. Stip.") on September 14, 2006. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## PROCEDURAL HISTORY

On May 13, 2002, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") disability benefits under Title II and Title XVI of the Social Security Act. (Administrative Record ("AR") 56-58). She alleged a disability onset date of August 30, 2000 due to "stress, insomnia, anxiety and T.M.J." She also alleged that her feet limited her ability to work. (AR 61-66).

The Agency denied Plaintiff's claim for benefits initially and upon reconsideration. (AR 38, 45). Upon Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Milan Dostal, who issued a decision denying benefits on April 28, 2004. (AR 459-580,19-25).

Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on June 3, 2005, making the ALJ's decision the final decision of the Commissioner. (AR 6-8). Plaintiff subsequently commenced this action.

## FACTUAL BACKGROUND

Plaintiff began working for Fleetwood Travel Trailers in August of 1996. (AR 220). Plaintiff alleges that she was sexually harassed by a co-worker starting in January of 1999. Although Plaintiff was never physically assaulted, she alleges that her co-worker "would go into a trailer, and make sexual comments to her such as, 'you are so pretty, you look so fine.'" (Id.). Plaintiff states that she felt

uncomfortable and nervous about attending work. (Id.) Plaintiff alleges that the co-worker was transferred in July of 2000 but before leaving he typed a letter about her which was circulated around the workplace by a secretary. (Id.) On August 8, 2000, Plaintiff became unable to work due to anxiety and stress. (AR 66).

**A. Dr. Marshak's Evaluation of Plaintiff**

On April 12, 2001, Plaintiff was evaluated by Dr. Herbert Marshak, a psychiatrist, in relation to her workers' compensation claim. (AR 220-241). Plaintiff complained of "anxiety, depression, sleeplessness and general tension following harassment at work." (AR 238). Dr. Marshak found Plaintiff to be pleasant, cooperative and to maintain eye contact well. The doctor also noted her to have a "normal level of consciousness" and a "positive attitude." (AR 222).

According to Dr. Marshak, Plaintiff was "functioning at an average intellectual level, with a fund of knowledge appropriate for age, sex, educational level and life experience. [She] demonstrat[ed] average judgment and insight." (Id.) The doctor found that Plaintiff did not "appear to display mental and physical fatigue" and that she was lucid. (Id.)

Despite Dr. Marshak's overall average assessment of Plaintiff, he diagnosed her with an Anxiety Disorder. He found that she was "temporarily totally psychologically disabled . . ." but could be treated "within a period of three months." (AR 238-240). Additionally, he "felt that she will be able to return to the work force upon

completion of this treatment and all subsequent treatments, and that she will be able to return to a previous and perhaps more effective level of functioning." (AR 240). Dr. Marshak also examined Plaintiff monthly from June to August of 2001 and on October 22, 2001. ( AR 243, 246, 247, 249). Dr. Marshak diagnosed Plaintiff as having "severe anxiety and features of depression" during each subsequent examination. (Id.).

**B. Dr. Abejuela's Evaluation of Plaintiff**

On September 12, 2002, Dr. Reynaldo Abejuela, a psychiatrist, performed a psychiatric examination of Plaintiff at the request of the California Disability Determination Service. (AR 22, 273-278). Dr. Abejuela noted that Plaintiff described her mood as "mildly depressed." Additionally, she was having "nightmares" and problems with her concentration and memory. (AR 274). Despite these issues, Plaintiff rated her energy level as "fair." Dr. Abejuela found that Plaintiff did not have feelings of guilt, helplessness, worthlessness and hopelessness or any suicidal intentions. (Id.).

According to Dr. Abejuela, Plaintiff cares for her own hygiene and grooming and performs "household chores, errands, shopping and cooking." She pays her bills and manages her own money. (AR 275). Dr. Abejuela found Plaintiff to be "pleasant, cooperative and non-hostile" and able to communicate with the aid of an interpreter. Plaintiff described her social functioning as "good." She visits with friends outside of the home and goes out to dinner with her boyfriend four to five times a week. (AR 274-275).

Based on her medical records and his examination of Plaintiff, Dr. Abejuela concluded that she had mild depression and anxiety. He determined that her prognosis was "fair to good" and that Plaintiff had no limitations due to her impairments. (AR 277).

**C. Dr. Blankenship's Evaluation of Plaintiff**

On April 25, 2003, Plaintiff was evaluated by Dr. Dabney Blankenship, a psychologist, in relation to her workers' compensation claim. (AR 303-330). Dr. Blankenship determined that Plaintiff was slightly to moderately impaired in most areas of work functioning. (AR 327).

Plaintiff's mental status evaluation presented normal and average findings. Although Plaintiff stated that she had a depressed mood, Dr. Blankenship opined that Plaintiff's affect was "appropriate to anxious" and her mood extremes to be "mild to moderate." (AR 311-314).

However, Dr. Blankenship concluded that "evidence suggests that the respondent is suffering from a clinical anxiety state, and it appears the complaints are having profound impact on her activities of her daily living." (AR 324). He diagnosed Plaintiff with a generalized anxiety disorder and major depression, single episode, severe, and determined her to be permanent and stationary. (AR 324-325).

\\

\\

\\

\\

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 404.1510.

disabled. If not, proceed to step four.

(4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart

---

[2] Residual functional capacity is what "[one] can still do despite [her] limitations" and represents an assessment "based upon all the relevant evidence in [one's] case record." 20 C.F.R. § 404.1545(a)

P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not

substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

**The ALJ Failed To Address Plaintiff's Claim For A Closed Period Of Benefits**

Plaintiff argues that the ALJ erred by failing to address Plaintiff's claim for a closed period of benefits. This Court agrees. Under the Social Security Act, a claimant is considered to be disabled if they are unable to "do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. 404.1505(a)(2006); 20 C.F.R. 404. 316 (2006). A closed period of benefits is awarded if a claimant is found to be disabled for a period of at least twelve months. 42 U.S.C. § 423(d)(1)(a)(2006); Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 921 (9th Cir. 2002)(court awarded claimant closed period of benefits for 18 months).

Plaintiff alleges a disability onset date of August 30, 2000. (AR 61). On April, 12, 2001, Plaintiff was evaluated by Dr. Marshak in relation to her workers' compensation claim. (AR 220-241). Dr. Marshak diagnosed Plaintiff with an Anxiety Disorder. He found that she was "temporarily totally psychologically disabled" due to stress and anxiety from experiencing sexual harassment in the workplace. (AR 238-240).

Plaintiff asserts that the ALJ failed to consider whether she was eligible for a closed period of benefits.

Plaintiff did not receive another medical evaluation until her meeting with Dr. Reynaldo Abejuela on September 12, 2002 after the closed period might have ceased. Dr. Abejuela performed a psychiatric examination of Plaintiff at the request of the California Disability Determination Service. (AR 22, 273-278). He noted that Plaintiff described her mood as "mildly depressed" but that she rated her energy level as "fair." She did not have any feelings of guilt, helplessness, worthlessness and hopelessness or any suicidal intentions. (Id.). Based on her medical records and his examination of Plaintiff, Dr. Abejuela concluded that she had mild depression and anxiety. He determined that her prognosis was "fair to good" and that Plaintiff had no limitations due to her impairments. (AR 277).

Plaintiff's medical evaluation results are clearly in conflict. The ALJ addressed the differing medical diagnoses of Plaintiff and concluded that Plaintiff's "anxiety is non-severe." (AR 22). However, the ALJ erred by failing to address Plaintiff's claim for a closed period of benefits. Plaintiff's alleged disability was confirmed by Dr. Marshak's evaluation of Plaintiff on April 12, 2001 and was not disputed until Dr. Abejuela's evaluation of Plaintiff on September 12, 2002, over a year later. The ALJ failed to give proper weight to Dr. Marshak's findings or provide legitimate reasons for rejecting them in regards to Plaintiff's claim for a closed period of benefits. It is entirely possible that Plaintiff became disabled in August 2000 and that her disability continued for twelve months, into 2001, and that her

condition improved by the time she was evaluated by Dr. Abejuela in 2002.

Furthermore, the ALJ failed to translate Drs. Marshak and Blankenship's workers' compensation findings into Social Security terms. Although workers' compensation disability ratings are not controlling in Social Security cases, an ALJ must nevertheless evaluate medical opinions stated in workers' compensation terminology just as he would evaluate any other medical opinion. Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988); Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002).

The ALJ must "translate" terms of art contained in such medical terminology in order to accurately assess the implications of those opinions for a Social Security disability determination. See Desrosiers, 846 F.2d at 576. "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.'" Booth, 181 F. Supp. 2d at 1105. As the ALJ did not translate the workers compensation findings here, remand is required.

Upon remand, the ALJ must expressly consider whether Plaintiff is entitled to benefits for a closed period. If necessary, he must further develop the record on this issue. See 20 C.F.R. § 404.1512 (d) &

(e)(1)(noting that an ALJ may recontact a treating physician, seek additional evidence, request copies of records, and may seek a new report or a more detailed report from a medical source, including the claimant's treating source). Finally, the ALJ must translate the worker's compensation findings into appropriate social security terminology.

**CONCLUSION**

Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered REVERSING and REMANDING the decision of the Commissioner for further administrative proceedings in accordance with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 20, 2006.

/ S /

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

[3] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."